**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 24 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ERIC L. LEWIS,

    Defendant-Appellant.

No. 00-3347
(D.C. Nos. 00-CV-3163-GTV
& 98-CR-20071-03-GTV)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **KELLY,** and **LUCERO**, Circuit Judges.

    This case raises a single issue: whether a district court's failure at a section 2255 evidentiary hearing to provide counsel to a defendant entitled to have counsel under Rule 8(c) requires reversal. We conclude that it does.

I.    <u>Background</u>

    A federal grand jury indicted Eric L. Lewis, the defendant-appellant, on October 27, 1998, for conspiracy to possess with intent to distribute approximately one pound of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841, and for conspiracy to possess

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. <u>See</u> Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

with intent to distribute one-half gallon of a mixture or substance containing phencyclidine ("PCP"), in violation of 21 U.S.C. § 846. In addition to Mr. Lewis, the grand jury indicted several other individuals, including Antonette A. Huckaby.

After the district court denied his motion to suppress the evidence against him, Lewis pled guilty on February 6, 1999, to being an accessory after the fact. On May 5, 1999, the district court sentenced Mr. Lewis to 87 months in prison. On May 5, 2000, exactly one year after being sentenced, Mr. Lewis filed a motion with the district court seeking to have his sentence set aside, vacated, or corrected. The district court granted Mr. Lewis's motion to proceed in forma pauperis in that proceeding.

Mr. Lewis's motion advanced several grounds for setting aside his sentence, including that he received ineffective assistance of counsel during his trial because his attorney, Mr. Carl Cornwell, failed to inform him that he was professionally associated with Ms. Huckaby's attorney, Mr. Brian Johnson. The only evidence Mr. Lewis presented in support of this claim was a March 9, 2000, docket sheet that listed the same address for Mr. Cornwell and Mr. Johnson.

On August 28, 2000, the district court held an evidentiary hearing and concluded that all of Mr. Lewis's claims were without merit. (Doc. 214; August 28, 2000 Tr. at 23-25.) At the onset of the hearing, Mr. Lewis requested that the district court appoint counsel to represent him, which the court denied. (August

28, 2000 Tr. at 4.)  The district court then explained to Mr. Lewis that, in light of the docket sheet, he had presented a prima facie case of ineffective assistance of counsel and that the government would bear the burden of rebutting this presumption.

The government then called Mr. Cornwell to the stand, and he testified that between June 1999 and May 2000 he and Mr. Johnson were, in fact, members of the same firm.  (Id. at 7-8.)  Mr. Cornwell testified, however, that he did not become professionally associated with Mr. Johnson until after Mr. Lewis was sentenced in May 1999.  (Id. at 8-9.)  Following direct examination, the district court clarified that although Mr. Johnson and Mr. Cornwell represented co-defendants in the same case, they were not co-counsel; the court then offered Mr. Lewis the opportunity to cross-exam his former attorney.  (Id. at 9-11.)  Mr. Lewis declined the invitation.  (Id. at 11.)

Following Mr. Cornwell's testimony, the district court gave Mr. Lewis the opportunity to present his other arguments to the court, complimented Mr. Lewis on his well-written brief, and encouraged Mr. Lewis to relax when he expressed nervousness about presenting his arguments before the district court.  The district court then denied Mr. Lewis's 2255 motion.  As to Mr. Lewis's ineffective assistance claim, the court explained that Mr. Cornwell's testimony demonstrated that he and Mr. Johnson were not professionally associated while Mr. Cornwell

represented Mr. Lewis.  Consequently, it concluded that Mr. Cornwell did not have conflict of interest while representing Mr. Lewis.  (Id. at 23.)

On October 2, 2001, Mr. Lewis filed a Notice of Appeal with this Court. On appeal, Mr. Lewis argued that the district court violated his statutory rights under Rule 8(c) of the Rules governing section 2255 proceedings.  Rule 8(c) unequivocally states,"If an evidentiary hearing is required, the judge shall appoint counsel for a movant who qualifies for the appointment of counsel under 18 U.S.C. § 3006A(g)."  Because prior decisions by this Court had held that 2254's Rule 8(c), which is identical to section 2255's Rule 8(c), requires appointment of counsel when an evidentiary hearing is held for a defendant who qualifies for counsel under section 3006A(g), see United States v. Swazo, 23 F.3d 332 (10th Cir. 1994), we concluded that "it appears Lewis qualified for mandatory appointment under Rule 8(c)."[1]  We further concluded that the failure to appoint counsel "hindered . . . [Mr. Lewis's] attempt to make" his Sixth Amendment ineffective assistance of counsel claim.  (Id., citing 28 U.S.C. § 2253(c)(2).) Consequently, while we found Mr. Lewis had not made a "substantial showing of a denial of a constitutional right" on the other grounds asserted before the district court, we granted a Certificate of Appealability on Mr. Lewis's ineffective

---

[1]In our August 10 order, we noted that a defendant who satisfies in forma pauperis requirements, as the district court held Mr. Lewis did, necessarily meets 3006A's requirements.  (August 10 order at 3.)

assistance of counsel claim. (Id. at 4.) In addition, we ordered the United States Attorney for the District of Kansas to submit a brief within thirty days addressing one question:

> What is the appropriate remedy for the district court's apparent violation of Rule 8(c) in this case?

(Id. at 4.) We now address that issue.

## II. Analysis

As the government forthrightly concedes in its brief, every circuit to date that has addressed the issue raised in our August 10, 2001 order has held that a Rule 8(c) violation requires automatic reversal and is not eligible for harmless error review. See Green v. United States, 262 F.3d 715, 718 (8th Cir. 2001); Shepherd v. United States, 253 F.3d 585, 588 (11th Cir. 2001); United States v. Iasiello, 166 F.3d 212, 213 (1999); United States v. Vasquez, 7 F.3d 81, 85 (5th Cir. 1993); Rauter v. United States, 871 F.2d 693, 697 & n.7 (7th Cir. 1989) (all holding harmless error analysis inapplicable to the Rule 8(c) violations). See also United States v. Duarte-Higareda, 68 F.3d 369 (9th Cir. 1995) (noting that all circuits hold that Rule 8(c) mandates the appointment of counsel and summarily reversing a district court that did not appoint counsel).

Notwithstanding the weight of authority against it, the government urges this Court to "pause before joining the stampede rejecting harmless error analysis and momentarily consider the wisdom of such an approach." (Aple. Br. at 10.)

The government advances several arguments in support of its position. First, it points out that "there is no constitutional right to appointment of counsel at an evidentiary hearing on a 2255 petition; instead it is mandated by statute." (Id. at 12.) Second, it notes that many constitutional errors are evaluated under the harmless error standard and do not result in automatic reversal. Finally, it contends that "structural" errors, which warrant automatic reversal, "emanate from the [C]onstitution," not statutes. (Id. at 13.) In essence, the government asserts that our sister circuits erred by "rais[ing] a statutory right to the appointment of counsel at a post-conviction evidentiary hearing above many constitutional rights which when violated do not require automatic reversal." (Id.)

Although we appreciate the government's argument, we reject it and hold that a violation of Rule 8(c) requires automatic reversal. We reach this conclusion for several reasons. First, precedent from this Circuit has already suggested that a Rule 8(c) violation under section 2255 requires automatic reversal. As touched on above, this Court held in Swazo that the failure to provide an attorney at an evidentiary hearing held under section 2254 requires reversal. 23 F.3d at 334 ("Because the district court did not appoint counsel when it required a hearing, we must remand the case for further proceedings.") (emphasis added). In reaching this conclusion, this Court expressly noted that the

"rules governing § 2255 cases contain a similar [right to counsel] requirement" and invoked precedent from other circuits which hold that a Rule 8(c) violation under section 2255 is not subject to harmless error analysis and requires automatic reversal.[2]  Id. at 334, citing Vasquez, 7 F.3d at 84 and Rauter, 871 F.2d at 695.  Although we never expressly stated that a harmless error analysis was inapplicable, our summary reversal and holding that the appointment of counsel was required, as well as the precedent we relied upon, suggested such a result.  23 F.3d at 334.

Even if we are not bound by our decision in Swazo, the government has not convinced us that we should break from the position taken by all the circuits that have considered this issue.  Although the government is correct in noting that cases where automatic reversal is required (i.e., cases involving "structural error") usually involve a constitutional violation, see Neder v. United States, 527 U.S. 1, 8 (1999); United States v. Stevens, 223 F.3d 239, 244 (3d Cir. 2000) (noting that "generally" structural errors are constitutional in nature), it is incorrect in suggesting that only constitutional errors warrant automatic reversal.  United States v. Annigoni, 96 F.3d 1132, 1144 (9th Cir. 1996) (en banc) (noting that "numerous errors are subject to automatic reversal even though they do not violate constitutional rights").  As the Supreme Court explained in Arizona v.

_____

[2]Section 2254's Rule 8(c) is identical to section 2255's.

Fulminante, 449 U.S. 279 (1991), a structural error is an error that affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself." Id. at 310. Among the rights deemed "structural" by the Supreme Court is the complete denial of counsel during a criminal trial, see Gideon v. Wainwright, 372 U.S. 335 (1963), which so affects "[t]he entire conduct of the trial from beginning to end." Fulminante, 499 U.S. at 309. Structural errors exist "where there are . . . 'defects in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards.'" United States v. Noushfar, 78 F.3d 1442, 1445, quoting Fulminante, 499 U.S. at 309 (emphasis added).

As our sister circuits have explained, evaluating a Rule 8(c) violation defies traditional harmless-error review. The Supreme Court explained in Fulminante, for example, that the "common thread connecting" harmless-error cases was that the error "could be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." 499 U.S. at 307-08. Yet where a defendant is denied his statutory right to counsel during a hearing, it is nearly impossible for an appellate court to determine whether this error was harmless. As the Fifth Circuit explained, "[I]t is difficult to accurately assess whether it was harmless error to deny counsel on the basis of a record developed at an evidentiary hearing conducted in the absence of that counsel. One can only speculate on what the

record might have been had counsel been provided." Vasquez, 7 F.3d at 85; see also Green, 262 F.3d at 718 (invoking Vasquez and rejecting the idea that the government can show the lack of counsel was "harmless by relying upon testimony from the very hearing at which [the defendant] was unrepresented"); Iasiello, 166 F.3d at 214 n.4 (same).[3]

III. Conclusion

In light of precedent from this Court and other circuits, the district court's denial of counsel to Mr. Lewis is REVERSED and this case is REMANDED to the district court for a proper evidentiary hearing.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

---

[3]The facts in this case demonstrate the point articulated by our sister circuits. On appeal, the government contends that the "absence of counsel had absolutely no impact on the district court's decision denying the motion to vacate, set aside, or correct sentence." (Aple. Br. at 13.) Essentially, the government asks this Court to assume that no new information would have been revealed at the hearing had appointed counsel, as opposed to Mr. Lewis, been given the opportunity to cross-examine Mr. Lewis's former attorney. The government's argument, however, completely ignores the fact that Mr. Lewis, who described himself as nervous during the proceeding, expressly declined his right to cross-examine Mr. Cornwell. (August 28, 2000 Tr. at 10-11.) Perhaps as a result of this, we know very little about the relationship between Mr. Cornwell and Mr. Johnson prior to June 1999.